# Quinn's Appeal.

1. A judgment confessed by a married woman can be enforced in the single instance where, when a conveyance is made to her, it forms part of an agreement under which she takes land, subject to the condition that she shall pay its price.

2. Where a married woman declares that she has no defence to a judgment, she is not thereby estopped from asserting its invalidity on the ground of her coverture. Glidden v. Strupler, 2 P. F. Smith 400, followed.

3. Where land is sold under a mortgage containing a waiver of exemption, the mortgagor is, after notice given, entitled to his exemption out of the surplus as against subsequent judgment-creditors. Hill v. Johnston & Parker 5 Casey 362, followed.

4. A judgment confessed by a married woman is void, and the discharge by the court of a rule to open such a judgment where the evidence is wholly inadequate to support such action, does not fix upon the record of the judgment the character of *res adjudicata*, so as to exclude her from participation in a fund.

March 19th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas of *Schuylkill county*: Of January Term, 1878, No. 150.

Appeal by David Quinn and Susan, his wife, from the decree of the court, confirming the report of the auditor appointed to distribute the fund arising from the sheriff's sale of the property of said Susan Quinn.

On the 28th of May 1866, Martin McGinness purchased two lots in Pottsville, from P. W. Shaefer, attorney for Walter S. Shaefer and wife, paying therefor $175, for which he took the attorney's receipt as follows:

"Pottsville, May 28th 1866.

"Received from Martin McGinness, laborer, of Pottsville, one hundred and seventy-five dollars, in full, for the surface of two lots in Mt. Hope, in the borough of Pottsville, on the north side of Minersville road, bounded east by John R. Hood's lot, on the west by James Galbraith's lot, and on the north by a twenty-foot alley. Said lots are 100 feet front both, and 23 feet deep, and subject to the usual reservations. Deed to be given as soon as practicable.

P. W. SHAEFER, Attorney."

On the back of this paper is the following endorsement:

"For value received I hereby assign this receipt to Susan Quinn, wife of David Quinn, and hereby request P. W. Shaefer, Esq., to make the deed to her. I have disposed of my entire interest in the same.

July 12 1866.                        MARTIN McGINNESS."

On January 23d 1867, a deed for the lots was executed by Shaefer and his wife to Susan Quinn. On August 20th 1867, Quinn and his wife executed a bond, with warrant of attorney, to confess judgment in favor of McGinness for $175, payable in seven payments. In 1870, Quinn and his wife mortgaged the two lots to the Pottsville Building Association for $600, which mortgage was recorded before the entry of judgment on the bond to McGinness. Judgment was entered on the bond February 1872, and it was then transferred to Kline, who issued a fi. fa. thereon. In September following, Mrs. Quinn filed an affidavit, setting forth her coverture, and the court granted a rule to show cause why the judgment should not be opened. Depositions were taken under this rule, and McGinness testified on behalf of the plaintiff, that he sold the lots to Mr. Quinn and his wife, and that the bond was taken as security for the purchase-money. He further testified, that at the time of the assignment he "took no security, nor writing, or anything;" that he "did not want anything," that he "thought it was all right," and that he "never had said anything to Mrs. Quinn about being paid for the lots 'till after they had their house nearly built." Quinn and his wife, on the contrary, swore that McGinness had given the property to Mrs. Quinn, who was his niece, and they had signed the bond without knowing what it was, and on the assurance of McGinness's counsel that "it would not amount to anything." There was also evidence to show that Mrs. Quinn had declared to Kline and his counsel, that she had no defence to the judgment before Kline purchased it.

The court, Pershing, P. J., discharged the rule in an opinion, saying: "For what then was the bond given? In the absence of evidence of any other business transaction between McGinness and the defendants, to which the bond in question could have application, we have come to the conclusion that it was given for the purchase-money of real estate. If so, it is valid against Mrs. Quinn, notwithstanding her coverture, as is shown in Patterson *v.* Robinson, 1 Casey 81, and other cases. There is another ground upon which we may refuse to open the judgment in this case. M. McGinness testifies that after the bond was executed by the defendants, they severally, at different dates, made him a small payment upon it; acts inconsistent with the allegations they now make. Roland Kline testifies that before purchasing the judgment, he went with his counsel, Mr. Wright, to the house of Quinn, to learn whether

[Quinn's Appeal.]

there was any defence to its payment, and was then informed by Mrs. Quinn that the bond was all right. In this he is corroborated by Mr. Wright. It appears from the testimony of Mr. Wright, that Martin McGinness called upon him (Wright) several times, and urged him to induce Kline to purchase the judgment. After he had become the assignee of the judgment, Roland Kline states that at the request of one or both of the defendants, he made an agreement by which the time of the several payments was extended. The assignee having shown that he paid a valuable consideration for the judgment, before doing which he had been informed by one of the defendants that no defence would be made to it; he is brought directly within the ruling of these points, in Weaver v. Lynch, 1 Casey 449. The principle of estoppel appears when an act or statement cannot be withdrawn without a breach of faith on the one hand, and an injury on the other; such an act rises from the rank of evidence to that of an estoppel, and absolutely binds and concludes the party affected by it: Doe v. Oliver, 2 Smith's Leading Cases 711, &c.; this kind of an estoppel is applicable to *feme coverts* and infants as well as others, for it could not be tolerated that such persons should be allowed to injure others with impunity: 1 Story's Equity, sec. 385. See also Fulton v. Moore, 1 Casey 468. After a careful examination of the whole case, we cannot find sufficient grounds for opening the judgment."

In 1875 judgment was obtained upon the mortgage to the Building Association, and Kline purchased the same and the property was sold on the levari facias thereunder. The sheriff made return that he had sold the premises for $600; that he had the receipt of Kline as assignee of the Building Association for the judgment and interest; and further, that he held Kline's receipt for $160 on account of the judgment on the bond, which amount it appeared, however, he had not taken from the sheriff's hands.

The auditor, inter alia, reported: "It being conceded that there is no exemption against the mortgage, the only question is, is the defendant entitled to the exemption in preference to the judgment of Martin McGinness for use of Kline against the defendants. In this case the judgment is upon a bond in the usual form, and does not show that it was for purchase-money, and standing alone, being given by a married woman, would not only be entitled to preference over exemption, but would be absolutely void. But the defendants having a knowledge of that fact went into court and asked to have the judgment opened. The depositions submitted are a part of the record in the original judgment, were submitted to and passed upon by the court, thus giving the defendants their full day in court, and the court decided against them. The auditor must, therefore, [no matter what impression of the fact the depositions might leave upon his own mind as to the original transaction,] treat the judgment as valid against both defendants, and for the pur-

5 Norris—29

chase-money of the property against which they are not entitled to the exemption. Concluding thus, your auditor has nothing to do with the question whether the notice was in time or not, though he believes the notice was in time, and would entitle them, if nothing else prevented, to the exemption ; and as to the point that Kline, the assignee of the judgment, is not entitled to the immunities of the purchase-money judgment, the assignee is certainly entitled to all the rights of the original plaintiff. This leaves it unnecessary for your auditor to make any particular distribution, as there is not sufficient money in court to pay the purchase-money judgment, and the deed ought to be acknowledged and the sale confirmed to Roland Kline."

The defendants filed exceptions to this report, among others the following : The auditor erred in awarding any money from the fund in court to Kline on the judgment of McGinness against defendant, as said judgment was entered on a confession of judgment by a married woman and was void.

The court, Walker, J., dismissed these exceptions and confirmed the report in an opinion, saying :

" The exceptions to the confirmation of this report virtually raises the same point decided by this court on the motion to open the judgment. It was there, as here, urged that the bond of Susan Quinn, a married woman, was invalid except for purchase-money.

" It was there held that the bond upon which suit is founded was given for purchase-money, and the court refused to disturb the judgment. The fact that the bond was given in part payment for two lots of ground has been found by the auditor, and distribution made accordingly. The authorities cited by Judge Pershing in his opinion, cover the whole case, and fully sustain his decision, and the case of Schlosser's Appeal, 8 P. F. Smith 439, relied upon by by the exceptant, is not in conflict with it in my opinion. The question here is therefore to be considered *res adjudicata*.

" Exceptions overruled and report confirmed."

Quinn and his wife took this appeal, assigning this decree for error.

*Lin Bartholomew* and *Reilly & Nash*, for appellants.—Patterson *v.* Robinson, 1 Casey 81, and Ramborger's Administrator *v.* Ingraham, 2 Wright 147, relied on by the court below, simply hold that a judgment bond of a married woman, given at the time of purchase, as a part of the consideration for transferring the title to her, is not void, but that whatever agreement to encumber her title she may make at that time, the law will not permit her to set up her coverture to defeat. But certainly her power to confess a judgment for the purchase-money would not continue for months after the legal and equitable estate is vested in her.

The conveyance and the execution of the judgment bond must

be one transaction; that is, the confession of the judgment must be contemporaneous with the transfer of the title to the married woman, and as a consideration therefor, otherwise it will be invalid: Brunner's Appeal, 11 Wright 73; Schlosser's Appeal, 8 P. F. Smith 495. The declarations of a married woman will not estop her. She had no power to contract, and certainly no contract can arise by implication from declarations made by a party laboring under such a disability: Rumfelt v. Clemens, 10 Wright 455; Keen v. Coleman, 3 Wright 299; Glidden v. Strupler, 2 P. F. Smith 400. In Weaver v. Lynch, 1 Casey 449, relied on by the court below, the party making the declarations was under no legal disability when the declarations were made.

*John W. Ryon* and *James Ryon*, for appellee.—There was a waiver of exemption in the mortgage, and a waiver of exemption as to one of the creditors having a lien on a fund is a waiver to all: Shelly's Appeal, 12 Casey 373. In law and fact the property was really that of Quinn himself. It was not clearly shown that the property was that of the wife: Bowers's Appeal, 18 P. F. Smith 126. Where a married woman purchases property and agrees to pay for it in the future, such a purchase is upon condition, and she will be bound to perform the condition. She will not be permitted to keep the property and the purchase-money too. "It does not charge her person, but the land," and a judgment bond given by her for the purchase-money will be enforced as a judgment against the land: Patterson v. Robinson, 1 Casey 81; Ramborger's Administrators v. Ingraham, *supra*.

As she has the right to purchase real property the law will hold her to her contracts as to the specific property, precisely in the same way such contracts would be binding between other parties competent to contract.

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

No connection between the judgment-bond executed by Quinn and his wife and the instruments by which Mrs. Quinn's title to the property sold by the sheriff became vested in her, was shown by the documentary evidence submitted to the auditor. The bond did not even recite that it was given for the purchase-money of the land. The contract made by P. W. Shaefer, as attorney for Walter S. Shaefer and his wife, with Martin McGinness, was made on the 28th of May 1866. McGinness assigned his interest in the contract to Susan Quinn on the 12th of July 1866, and Shaefer and his wife executed the deed to her on the 23d of January 1867. McGinness paid the whole consideration for the property when he received the contract. The character of the bond, which was not executed until the 20th of August 1867, as a purchase-money obli-

gation, could only be made out by parol testimony, and to that the Common Pleas resorted in disposing of the rule to open the judgment. The usual consequences were developed by the experiment. McGinness testified that he had sold the property to Quinn and his wife. They swore that he had given it to Mrs. Quinn, and that they signed the bond without knowing what it was, and on the assurance of McGinness's counsel that "it would not amount to anything." The conclusion that something like perjury was committed on one side or the other, could probably be safely drawn.

To apply the doctrine of Patterson *v.* Robinson, 1 Casey 81, and Ramborger's Administrator *v.* Ingraham, 2 Wright 146, to the circumstances of this case, would be a travesty of a rule of law. McGinness testified in terms that at the time of the assignment, he "took no security, no writing or anything;" that he "did not want anything;" that he "thought it was all right;" and that he "never said anything to Mrs. Quinn about being paid for the lots till after they had their house nearly built." The judgment-bond, therefore, was not even executed in pursuance of a previous agreement made either when the contract was assigned, or when the deed was delivered. In executing it, Mrs. Quinn was assuming, seven months after her title was vested, an entirely new obligation. She was performing no condition on which her tenure of the land depended, and was fulfilling no duty, legal or moral, which she owed to her assignor. Ramborger's Administrator *v.* Ingraham was ruled by Chief Justice LOWRIE on the ground that the conveyance and the lien for the purchase-money were all one transaction, and that the benefit and the burden were to be treated as valid alike. A judgment confessed by a married woman can be enforced in the single instance where, when a conveyance is made to her, it forms part of an agreement under which she takes land subject to the condition that she shall pay its price: Brunner's Appeal, 11 Wright 67. In Schlosser's Appeal, 8 P. F. Smith 493, two married women purchased some real estate on which there was at the time a subsisting lien. The plaintiff satisfied the judgment against the vendor, and took a new one against the vendees. It was held to be a clear case of novation—the substitution of a new debt for the old one—and the judgment, being a new contract by married women, was declared to be void. In the discussion of that case, SHARSWOOD, J., said that "the cases which permit a married woman to bind her separate property, are exceptions to a general rule of sound policy, and ought to be strictly confined within the limits prescribed. If we begin to reason upon the abstract justice of making her property answerable for her honest debts, the exceptions will soon eat out the rule itself." At the utmost, the bond of Mrs. Quinn, was given for an antecedent debt, and for a consideration which had passed to her months before. If under the facts presented, it could be treated as a purchase-money security, a rule would be established

which would place the property rights of a married woman at the mercy of an auditor or a jury whenever by the testimony of a single witness they would be subjected to attack.

At the hearing of the rule, testimony was before the court which tended to show that Mrs. Quinn had declared to Kline and his counsel that she had no defence to the judgment before Kline purchased it from McGinness and took an assignment. It was urged below, and has been argued here that she was estopped by her declarations from asserting its invalidity. This question was settled by an exhaustive and absolutely conclusive opinion of the present Chief Justice in Glidden v. Strupler, 2 P. F. Smith 400. It was there decided that the contract of a married woman being void, it cannot be ratified, even by deed, except in the mode prescribed by the statute; and that positive acts of encouragement which might operate to estop one *sui juris*, will not affect one who is under a legal disability.

Hill v. Johnston & Parker, 5 Casey 362, meets the objection of the appellees that the waiver implied in the execution of the mortgage under which the land was sold, bars the right of Mrs. Quinn to set up her exemption claim upon the fund. The rule established was, that where notice of the demand for exemption has been given to the sheriff before the sale of real estate on a *levari facias*, the want of an appraisement will not prevent the debtor from taking the amount of the claim out of the proceeds after the payment of the judgment on the mortgage. In his report the auditor expressed the opinion that the demand upon the sheriff was made in due time by the appellants.

It was urged further on the argument that the question of the validity of this judgment was settled by the determination which the Common Pleas made of the rule to open the judgment. It was said that the appellees were fully heard, and that they acquiesced in that determination. Certainly, they acquiesced. They could do nothing else. No appeal to this court was possible until the Act of the 4th of April 1877, was passed, and then the property had long been sold. The appellants had no remedy except to assert their rights in the distribution. The judgment was void upon its face. The evidence on which it was found to have been for purchase-money was before the auditor and is here in the record of this appeal. It was wholly inadequate to support the decision of the court below refusing to open the judgment, and that refusal left it in precisely its original position. Dorrance v. Scott, 3 Wharton 309, decided not only that a judgment against a married woman was void, but that a judgment in a scire facias issued upon it was void as well. In Caldwell v. Walters, 6 Harris 79, a married woman was permitted to maintain an ejectment against a purchaser of her property at sheriff's sale under a judgment which she had confessed. And in Swayne v. Lyon, 17 P. F. Smith 436, a

[Quinn's Appeal.]

title was held to be unmarketable which a vendor had acquired at a sheriff's sale under an adversary judgment against a wife. The declaration in the action contained two counts for materials furnished at the wife's request for the improvement of her separate real estate. But the common counts were added, and the vendee was relieved from the obligation of his contract because, notwithstanding the judgment, execution and sale, the wife would remain at liberty to show that the recovery was on claims covered only by those counts, for which she was subject to no liability. The discharge of the rule to show cause did not fix upon the record of the judgment against Mrs. Quinn the character of *res adjudicata* so as to exclude her from participating in this fund.

The decree is reversed at the costs of the appellee; and it is now ordered and adjudged that the moneys produced by the sheriff's sale, after payment of the principal debt, interest and cost accrued in the judgment upon the mortgage to the Pottsville Building and Saving Fund Association, and of the costs of the audit, be distributed and paid to the appellants.